IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **DIRECT MORTGAGE CORPORATION,**<br><br>        **Plaintiff,**<br><br>vs.<br><br>**NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA,**<br><br>        **Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:06CV534<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiff Direct Mortgage Corporation's Motion to Reconsider Order Striking Expert Reports.[1] The court has carefully considered the pleadings, memoranda, and other materials submitted by the parties and the law and facts relating to this motion. The court concludes that hearing or oral argument would not materially assist the court in rendering a decision. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Lloyd Rutherford, an employee of Direct Mortgage Corporation ("Direct Mortgage"), falsified loan documents in order to close several mortgages between 2002 and 2004.[2] Not

---

[1] Motion to Reconsider Order Striking Expert Reports, docket no. 98, filed June 4, 2010.

[2] Complaint at 3, Docket No. 1, filed June 30, 2006.

1

knowing that the loans were based on fraudulent documents and representations, Direct Mortgage resold the mortgages to various business partners, including CitiMortgage and Washington Mutual.[3] When Rutherford's fraud was discovered, these partners demanded that Direct Mortgage repurchase the loans.[4]

Direct Mortgage had purchased insurance from National Union Fire Insurance Co. ("National Union") that insured Direct Mortgage against losses that directly resulted from the fraudulent actions of an employee.[5] After their business partners demanded repurchase of the mortgages, Direct Mortgage submitted a claim to National Union pursuant to that policy.[6] The claims resolution process took a great deal of time, as National Union's agents requested additional information on several occasions.[7] Without payment on the policy, Direct Mortgage was unable to repurchase the loans. In an effort to recover on the policy, Direct Mortgage filed suit in this court, seeking a declaratory judgment that the losses that resulted from Rutherford's conduct were covered under the policy.[8] Direct Mortgage also alleged that National Union's failure to proceed promptly with a decision on the claim constituted a breach of contract and the implied covenant of good faith and fair dealing.[9] In response, National Union filed a motion for

---

[3] *Id.*

[4] *Id.*

[5] *Id.* at 2.

[6] *Id.* at 3.

[7] *Id.* at 4-7.

[8] *Id.* at 6-7.

[9] *Id.* at 7-8.

2

summary judgment on Direct Mortgage's claim for declaratory judgment.[10] That motion was granted.[11]

In support of their claim for damages, Direct Mortgage offered Derk Rasmussen and Robert Wilcox as expert witnesses. These witnesses submitted expert reports prior to National Union's motion for summary judgment.[12] Before summary judgment was granted, National Union moved to strike these expert witness reports[13] on the grounds that they violated the Federal Rules of Evidence.[14] This motion was denied without prejudice because the expert reports were irrelevant to Judge Campbell's ultimate decision to grant summary judgment.[15] Following the grant of summary judgment, National Union again moved to strike the Rasmussen and Wilcox reports,[16] arguing that the reports assumed that the insurance policy covered the losses suffered by Direct Mortgage, a position that Judge Campbell rejected in granting summary judgment.[17]

---

[10] Defendant's Motion for Summary Judgment, Docket No. 28, filed Jan. 24, 2008.

[11] Order and Memorandum Decision ("Summary Judgment Order"), docket no. 62, filed Aug. 8, 2008.

[12] Expert Report of Robert E. Wilcox ("Wilcox Report"), docket no. 24, filed Jan. 7, 2008; Expert Report of Derk G. Rasmussen ("Rasmussen Report"), docket no. 25, filed Jan. 7, 2008.

[13] Motion to Strike the Expert Reports of Derk G. Rasmussen and Robert E. Wilcox, docket no. 48, filed Apr. 4, 2008.

[14] Memorandum in Support of Motion to Strike the Expert Reports of Derk G. Rasmussen and Robert E. Wilcox at 2-3, docket no. 49, filed Apr. 4, 2008.

[15] Summary Judgment Order at 2.

[16] Defendant's Motion to Strike the Expert Reports of Derk G. Rasmussen and Robert E. Wilcox, docket no. 82, filed May 19, 2009.

[17] *Id.* at 2. National Union also renewed the objections raised in their earlier motion to strike the reports of Rasmussen and Wilcox, which was denied without prejudice in the Summary

This court granted National Union's motion, observing that Direct Mortgage had argued that the expert reports were admissible because of the possibility that Direct Mortgage could appeal the grant of summary judgment to the Tenth Circuit prior to a trial of the remaining claims.[18] Direct Mortgage then filed the motion to reconsider which is now before the court, arguing that they never conceded that the expert reports were irrelevant to the causes of action that will go to trial.[19]

**DISCUSSION**

Direct Mortgage contends that the court erred in striking the expert reports of Rasmussen and Wilcox. Direct Mortgage argues that the court mistakenly believed that Direct Mortgage had conceded that the reports were based on the assumption that National Union was liable for payment under the insurance policy.[20] National Union argues, however, that Direct Mortgage had indeed conceded this point and that the Rasmussen and Wilcox reports were too vague to offer support to Direct Mortgage's remaining claim.[21] For the reasons below, the court grants in part and denies in part Direct Mortgage's motion.

---

Judgment Order.

[18] Order, Docket No. 94, filed Mar. 4, 2010.

[19] Memorandum in Support of Motion to Reconsider Order Striking Expert Reports ("Support Memorandum") at 2, Docket No. 99, filed June 4, 2010.

[20] *Id.*

[21] Defendant's Opposition to Motion to Reconsider Order Striking Expert Reports ("Opposition Memorandum") at 15-18, Docket No. 102, filed June 25, 2010.

## Rule 702's Relevance and Reliability Standards

Rule 702 does not permit expert testimony that "does not relate to any issue in the case."[22] When an expert does intend to testify about relevant matters, his testimony must be "the product of reliable principles and methods".[23] These reliable methods must effectively link the specific misconducts alleged by the plaintiff to particular damages that the plaintiff claims to have suffered.[24] While it is not necessary that the expert consider every conceivable cause of a harm suffered by the plaintiff, it is necessary that the expert consider enough causes to indicate a rigorous analysis typical of other experts in the field.[25] When the court finds that an expert opinion falls short of these standards, the court is obligated to keep that testimony from the jury in order to avoid confusion and prejudice.[26] The trial court has broad discretion in performing this "gatekeeping" function.[27]

## The Rasmussen Report

Upon further review of the Rasmussen Report, the court reaffirms the decision to strike Rasmussen's testimony. This decision is based on the following four considerations: 1) the irrelevance of much of the testimony in the Rasmussen Report, 2) Rasmussen's testimony is based solely on marketing projections, 3) Rasmussen offers no explicit analysis of causation, and

---

[22] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993).

[23] Fed. R. Evid. 702.

[24] *Microstrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1354-55 (Fed. Cir. 2005).

[25] *Id.*

[26] *Daubert*, 509 U.S. at 589.

[27] *Neiberger v. Fed Ex Ground Package Sys., Inc.*, 566 F.3d 1184, 1189 (10th Cir. 2009).

4) Rasmussen's failure to consider other factors that might have caused the harm alleged by Direct Mortgage.

## The Relevance of Rasmussen's Testimony

National Union's motion for summary judgment resolved all claims except Direct Mortgage's claim that National Union breached their contract by failing to promptly adjudicate the claim. Therefore, Direct Mortgage's sole remaining theory of damages is that if Direct Mortgage had known more promptly that National Union would not pay the claim, Direct Mortgage could have responded more quickly to lenders and retained the ability to offer certain mortgage products. The only relevant expert testimony that could now be offered would address whether National Union met industry standards in its response to Direct Mortgage and the specific effect of its failure to do so.

The Rasmussen Report, by contrast, assumes throughout that National Union was obligated to pay Direct Mortgage's claim and that if this had been done, Direct Mortgage could have repurchased the mortgages in question and been able to offer the mortgage products that were later denied to them. Because this assumption is so pervasive, the court cannot reliably determine what portions of the Rasmussen report are relevant. Had Rasmussen isolated the impact of the failure to buy the mortgages from Direct Mortgage's purported inability to respond quickly to mortgage lenders, the court could determine what is relevant and what is not. Rasmussen's failure to do this makes it impossible for the court to determine what, if anything, remains in his report that would be helpful to the jury. The court's gatekeeping function under *Daubert* requires that irrelevant information be excluded.[28] Rasmussen's failure means that the

---

[28] *Daubert*, 509 U.S. at 589.

only way to do this is to exclude the entire report.

### The Impact of Marketing Projections on Rasmussen's Analysis

It is difficult to base a claim for damages on internal marketing projections that may be unduly optimistic or unrealistic. This is particularly so when the assumptions underlying the projections are unsupported by hard data or realistic analogies to other markets or commodities.[29] Unsupported assumptions about profits from future business transactions are suspect, especially when the transactions that were to create the profits do not materialize at all.[30]

Rasmussen's method of estimating damages is to accept projections from Direct Mortgage president Max Doane and estimate the profits from each transaction. There is no attempt to examine sales figures from comparably sized businesses. There is no attempt to estimate the percentage of sales figures that would come from new loans and the percentage that would come from customers who were already inclined to purchase another Direct Mortgage product. Most striking of all, there was no attempt to identify any sort of support for Doane's estimates. Without further analysis, Rasmussen simply accepts the projections and calculates the amount of damages. As in *ADVO*, this does not qualify as rigorous, reliable analysis and falls short of Rule 702's requirements.[31]

### Rasmussen's Failure to Examine Causation

Conclusory allegations or assumptions of liability are insufficient to meet the standards of Rule 702, particularly when the entire amount of damages is attributed to the defendant's actions

---

[29] *Target Mkt. Publ'g, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1144 (7th Cir. 1998).

[30] *Id.*

[31] *Id.*

without explanation or support.³² Even if Rasmussen had not used suspect marketing projections to estimate Direct Mortgage's sales of CitiMortgage and Washington Mutual products, the court must reject his report for its failure to demonstrate that CitiMortgage and Washington Mutual chose to bar Direct Mortgage from selling their projects because of National Union's delay in adjudicating the insurance claim. Rasmussen's only support for this conclusion is "discussion with counsel and Max Doane."³³ Rasmussen does not explain what led Doane to believe that National Union's actions were entirely responsible for Direct Mortgage's reversal of fortune. Rasmussen does not even speculate about why this was the case. As this court held in *Trugreen*, conclusions based on unsupported estimates or guesses are not sufficient to meet the Rule 702 standard. Therefore, Rasmussen's testimony is inadmissible.

Direct Mortgage argues that Rasmussen clearly considered the damage to Direct Mortgage's reputation as a result of the actions of National Union, indicating that the report goes beyond the assumption of coverage and explains why National Union is liable.³⁴ Rasmussen may have assumed that National Union's actions harmed Direct Mortgage, but there is no meaningful analysis that explains why this is the case and why the failure to adjudicate the claim quickly and not the failure to pay the claim caused the harm to Direct Mortgage. Even assuming *arguendo* that Rasmussen's analysis is based entirely on National Union's failure to quickly adjudicate the claim, Rasmussen fails to explain why this failure cost Direct Mortgage any business at all, much less the amount cited in his report. As this court held in *Trugreen*, assumptions are no substitute

---

³² *Trugreen Co., L.L.C. v. Scotts Lawn Svc.*, 508 F. Supp. 2d 937, 959 (D. Utah 2007).

³³ Rasmussen Report at 3.

³⁴ Support Memorandum at 13.

for analysis of causation in an expert report. Because Rasmussen assumes National Union caused damages and does not explain why this is so, his testimony is inadmissible.

Rasmussen's Failure to Examine Substantial Factors That Could Have Contributed to Direct Mortgage's Loss

Since Rasmussen provided no data to support his belief that National Union's actions cost Direct Mortgage business, it is unsurprising that several alternate causes of Direct Mortgage's loss are not considered. For example, the most obvious reason that CitiMortgage and Washington Mutual might have chosen not to do business with Direct Mortgage is Direct Mortgage's inability to make the payments required by those mortgage lenders. Direct Mortgage now contends that the primary factor in this loss was Direct Mortgage's inability to provide a decision to those lenders because of National Union's delay. That, of course, is a question to be answered at trial. However, Rasmussen's report makes no attempt to grapple with this obvious alternative cause of the harm suffered by Direct Mortgage. Indeed, this alternative cause is so obvious that Direct Mortgage's initial complaint alleges that damages were done "due to [Direct Mortgage's] inability to promptly *comply with the repurchase demands of its customers*" (emphasis added).[35]

The Rasmussen Report also fails to consider other highly plausible causes of the harm suffered by Direct Mortgage. For example, Direct Mortgage could have easily been shunned by CitiMortgage and Washington Mutual due to the fraudulent actions of Mr. Rutherford. Rutherford was dismissed as a result of what happened at Direct Mortgage, but CitiMortgage and

---

[35] Complaint at 7.

Washington Mutual may have decided that further dealings with Direct Mortgage were simply too risky. Another alternate cause that Rasmussen does not consider is the possibility that CitiMortgage and Washington Mutual did not extend access to their new products to all of their business partners. Rasmussen provides no proof that the products were offered to all partners of CitiMortgage and Washington Mutual or that the products were offered to partners like Direct Mortgage. Failure to consider this issues is indicative of a lack of rigor that falls short of Rule 702's requirements for expert testimony. For these reasons, Rasmussen's testimony is inadmissible.

## The Wilcox Report

Upon further review of the Wilcox Report, the court concludes that there are certain portions of the report that are relevant to the remaining cause of action and meet Rule 702's requirements. However, other portions of the report either assume that National Union is liable for payment or fall short of the standards of Rule 702.

### Admissible Portions of the Wilcox Report

The following sections of the Wilcox Report are admissible under Rule 702:

- Section I ("Introduction and Scope")[36] is acceptable with the exception of the first and second causes of action listed by Wilcox. Those causes of action were resolved on National Union's motion for summary judgment.[37] The remainder of this section offers background information about Wilcox's qualifications and the current posture of the case.

---

[36] Wilcox Report at 1-2.

[37] Summary Judgment Order.

- Section II ("Background Facts")[38] contains background information.
- Section III ("General Information")[39] contains information about the regulation of the insurance industry and industry standards. Wilcox is qualified to testify about these matters.
- Section IV ("Direct Mortgage's Claim")[40] describes Direct Mortgage's claim. While this portion of the report is admissible, the court cautions Direct Mortgage and Wilcox that testimony suggesting that National Union is liable for payment on the policy or that National Union was wrong to refuse payment is inadmissible because this claim has been decided on summary judgment. Wilcox's testimony will be limited to Direct Mortgage's remaining claim that National Union breached their contract with Direct Mortgage by failing to move quickly on the claim, even if it would ultimately be denied.
- Section V ("Discussion of Allegations")[41] is the heart of Wilcox's analysis and offers his opinions concerning the conduct of Direct Mortgage. Subsections A[42] and B[43] are admissible. As explained below, subsection C[44] and the first

---

[38] Wilcox Report at 2-3.

[39] *Id.* at 4-7.

[40] *Id.* at 7-8.

[41] *Id.* at 8-11.

[42] *Id.* at 8-9.

[43] *Id.* at 9.

[44] *Id.* at 9-10.

11

paragraph of subsection D[45] are inadmissible. All but the first paragraph of subsection D is admissible, as it relates directly to whether National Union met industry standards in its treatment of Direct Mortgage's claim.

- The first three conclusions in Section VI ("Analysis and Opinions")[46] are admissible because they relate directly to Wilcox's analysis concerning National Union's treatment of the claim. The other two conclusions are inadmissible for reasons stated below.

<u>Inadmissible Portions of the Wilcox Report</u>

Wilcox will not be permitted to testify concerning National Union's liability for payment of the bond. The following sections of the report are inadmissible because they would offer testimony on this point. The court cautions that Direct Mortgage and Wilcox will not be permitted to testify as to National Union's liability for payment even in connection with otherwise admissible portions of the report that are listed above. Such testimony would confuse the jurors by conflating the claim that National Union should have paid on the policy with the claim that National Union breached the contract by denying the claim too slowly and without proper diligence. Since the propriety of National Union's decision to deny payment is not at issue in this case, testimony concerning that outcome would be confusing and would not aid the jurors in determining a fact at issue.[47]

---

[45] *Id.* at 10-11.

[46] *Id.* at 12.

[47] *Daubert*, 509 U.S. at 591.

- "Cause 1" and "Cause 2" as listed in Section I[48] are stricken from the report because they refer to causes of action that are no longer before the court.

- Subsection C of Section IV[49] is inadmissible because it testifies to damages suffered as a result of a failure to meet repurchase demands "without the resources that should have been available from the insurance contract as promised by National Union".[50] This claim has already been resolved on summary judgment and Wilcox is not permitted to testify about these matters, even in connection with the claim remaining before the court.

- The first paragraph of Subsection D of Section IV[51] is inadmissible because it states that National Union's liability was "reasonably clear."[52] Since this court has held as a matter of law that National Union was not liable, National Union's liability cannot be "reasonably clear."

- The fourth conclusion in Section VI[53] is inadmissible because it testifies that National Union wrongfully concluded that Direct Mortgage's claim should be denied. Again, this contradicts this court's grant of summary judgment.

- The fifth conclusion in Section VI[54] is inadmissible because it offers an opinion as

---

[48] *Id.* at 1.

[49] *Id.* at 9-10.

[50] *Id.* at 10.

[51] *Id.*

[52] *Id.*

[53] *Id.* at 12.

[54] *Id.*

13

to the amount of damages suffered by Direct Mortgage. The only analysis of damages in the Wilcox Report is in Subsection C of Section V, which was stricken for the reasons indicated above. Since there is no remaining analysis of damages, this portion of the Wilcox Report is inadmissible because it is a conclusory assumption of liability without foundation. This is inadmissible under Rule 702 for the same reason as Rasmussen's opinion as to damages suffered by Direct Mortgage.

## ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff Direct Mortgage Corporation's Motion to Reconsider Order Striking Expert Reports (Docket No. 98) is GRANTED in part and DENIED in part. The Rasmussen Report remains stricken, but the court will permit portions of the Wilcox Report to stand, as explained above.

DATED this 29th day of March, 2011.

DALE A. KIMBALL
United States District Judge